FILED
IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION 2006 JUL 25 ₽ 3: 11

DISTRICT OF UTAH

BY_____
DEPUTY CLERK

| | |
|---|---|
| AARON RAISER,<br><br>        Plaintiff,<br><br>  v.<br><br>DAVID M. KONO, DANIEL L.<br>STEELE, FRED HOWARD in his<br>official capacity, BENNETT<br>TUELLER JOHNSON & DEERE,<br>BRIGHAM YOUNG UNIVERSITY, and<br>JON HUNTSMAN in his official<br>capacity,<br><br>        Defendants. | Case No. 2:06-CV-256 TC<br><br><br><br><br>**REPORT AND RECOMMENDATION** |

    Plaintiff filed his complaint in this case on March 28,
2006, and the case was assigned to United States District Judge
Tena Campbell. (Document #1.)  On April 18, 2006, United States
District Chief Judge Dee Benson entered an order imposing
restrictions on Plaintiff's ability to file cases in this court
based on the court's review of the numerous cases and pleadings
Plaintiff has filed in this court. (Document #2.)  On May 5,
2006, Plaintiff filed a notice of appeal as to the restricted
filer order. (Document #4.)  On May 19, 2006, The Tenth Circuit
dismissed Plaintiff's appeal for lack of jurisdiction. (Document
#14.)

On May 9, 2006, Judge Campbell referred this case to United States Magistrate Judge Samuel Alba pursuant to 28 U.S.C. § 636(b)(1)(B).  (File Entry #12.)  In the order referring this case, the magistrate judge was directed to "review this case to determine whether the action is meritorious, duplicative or frivolous and therefore subject to dismissal pursuant to the filing restrictions imposed on Mr. Raiser by an order entered by Chief Judge Dee Benson on April 14, 2006."[1]

Plaintiff is the plaintiff in eleven cases,[2] including this one, filed in this court from 2000 to 2006.  Of those eleven cases, eight have been closed.  In this case, Plaintiff brings several claims related to litigation that has occurred in this court and in state court and Plaintiff brings a claim alleging that there is a violation of church and state in the State of Utah's judiciary system.

Having carefully reviewed Plaintiff's complaint, the court concludes that this case lacks merit and is therefore subject to dismissal pursuant to the Court's April 14, 2006 order.

---

[1] The order of reference lists the date that the restricted filer order was entered as April 14, 2006.  To clarify, Judge Benson signed the order on April 14, 2006, but the order was not filed until April 18, 2006.

[2] A twelfth case was also opened by the court pertaining to Plaintiff's appeal of Judge Benson's restricted filer order.  (2:06-mc-382-DB.)

## BACKGROUND (AS DERIVED FROM
## PLAINTIFF'S COMPLAINT, INCLUDING EXHIBITS)

The facts alleged in Plaintiff's complaint discuss three separate actions brought by Plaintiff against Brigham Young University (hereafter referred to as "BYU"). First, Plaintiff filed an action in Utah's Fourth District Court in August 2002, alleging common law torts against BYU. In September 2002, BYU removed the case to federal court. Plaintiff then filed a motion to have the case remanded to state court. Nothing happened until approximately a year later, when Plaintiff's motion was suddenly granted and the case was remanded. After the case was remanded to state court, Plaintiff filed a motion to amend the complaint. BYU opposed the motion to amend. Plaintiff filed a motion for sanctions. The state judge denied Plaintiff's motion to amend and instead awarded BYU Rule 11 sanctions under the Utah Rule of Civil Procedure, to be paid by Plaintiff, for $2,791. Plaintiff filed a motion to reconsider. In response, the state judge ordered further monetary sanctions against Plaintiff for filing the motion to reconsider.

Second, Plaintiff is the plaintiff in a federal case involving alleged civil rights violations. At a hearing in April 2005, Plaintiff, who lives in California, appeared by phone. United States District Judge Tena Campbell, the judge in the case, ordered Plaintiff to conduct the deposition of a BYU witness in person. Plaintiff told Judge Campbell that he was

3

homeless and barely had enough money to survive from day to day. The court still ordered Plaintiff to get to Utah within three months for the deposition.  Counsel for BYU who attended that hearing are Defendants Daniel Steele and David Kono.  Plaintiff claims they were present at the hearing and heard Plaintiff state that he was homeless and barely had enough money to survive from day to day.

Plaintiff alleges that after Defendants Steele and Kono heard of Plaintiff's financial circumstances, they went to the state judge in the state case and prepared an "ex parte motion and Order requiring Plaintiff to be in Utah in Person on July 19, 2005."  Plaintiff alleges that "BYU drafted that motion and Order and it specifically stated that Plaintiff could be arrested if he did not show up," and that BYU picked the date July 19, 2005, as the hearing date.  July 19, 2005, was the last day for Plaintiff to do discovery in the federal case.  Plaintiff claims he had planned to depose the witnesses in the federal case around July 5 to avoid the deadline date for discovery.  Plaintiff claims counsel for BYU picked July 19 as the hearing date to force Plaintiff to do the depositions on the last day of discovery when he had to be there or face arrest.

Plaintiff claims that because he only had money for one trip to Utah, he was forced to postpone the depositions until July 19. Plaintiff claims that counsel for BYU then withdrew their witness's availability for July 19, and that counsel for BYU also

4

claimed privilege from disclosing any information, which privilege was later ruled improper. Plaintiff claims that he then had no time before the discovery deadline to finish discovery.

Plaintiff did not attend the July 19 hearing and BYU asked for the arrest warrant and it was issued.

Plaintiff appealed the issuance of the arrest warrant and the "near $3000 sanction." Plaintiff claims that the Utah Court of Appeals concluded that no final appealable order existed.

Plaintiff was told, when he called the trial court, that the warrant had been dropped because no one had shown up at the latest hearing. Based on that information, Plaintiff did not appeal the matter to the Utah Supreme Court. Because Plaintiff had filed a motion to recuse Judge Howard (which was denied), at the time he called the case was being handled by a different judge. When the case returned to Judge Howard, Judge Howard refused to rescind the order.

Third, Plaintiff filed a breach of contract case against BYU in state court in July 2002 when BYU police "singled Plaintiff out and unlawfully detained Plaintiff on campus as a student in violation of 42 U.S.C. [§] 1983, when he was a student in 2002 and when a student security guard supervised by the BYU police approached one of Plaintiff's former roommates, a friend . . . and began telling his friend of the many negative things that police dispatch (appeared to have) had on Plaintiff." Plaintiff

5

claims that case was dismissed because the trial court held that the four corners of the contract did not specifically prohibit the BYU police and security from that behavior. Plaintiff appealed to the Utah Court of Appeals and lost.

Plaintiff then appealed to the Utah Supreme Court. Plaintiff claims the Utah Supreme Court allowed BYU to file a late response, and as a result, Plaintiff's writ of certiorari was denied. Plaintiff's motion to strike the late brief was denied. Plaintiff "suspects that the motion to strike was not forwarded to the justices."

Plaintiff alleges that Governor Huntsman is in charge of selecting members of the judicial selection committees, which makes binding recommendations for judges to fill the vacancies for the judiciary of Utah. Plaintiff claims that of the twelve state judges involved in his cases, all twelve were members of The Church of Jesus Christ of Latter-day Saints (hereafter referred to as "LDS Church"), which, Plaintiff alleges, does not represent the community.

## ANALYSIS

A complaint's sufficiency is a question of law requiring the court to decide whether the factual allegations, if true, would entitle Plaintiff to some form of legal remedy. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Dunn v. White*, 880 F.2d 1188, 1190 (10th Cir. 1989), *cert. denied*, 493 U.S. 1059 (1990). The court accepts all well-pleaded facts as true and draws inferences

6

from those facts in favor of Plaintiff. *See Bauchman v. West High Sch.*, 132 F.3d 542, 550 (10th Cir.), *cert. denied*, 524 U.S. 953 (1998); *Dunn*, 880 F.2d at 1190. However, legal conclusions, deductions, and opinions couched as facts are not presumed to be true, and "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Fogle v. Pierson*, 435 F.3d 1252, 1263 n.7 (10th Cir. 2006). In addition, because Plaintiff is proceeding pro se, the court construes his pleadings and arguments liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Ledbetter v. City of Topeka, Kansas*, 318 F.3d 1183, 1187 (10th Cir. 2003).

In his 113-page complaint (including exhibits), Plaintiff sets forth five main claims for relief. First, Plaintiff claims an action under 42 U.S.C. § 1983 against Defendants Kono, Steele, BYU, Bennett Tueller Johnson & Deere, and Judge Howard. Second, Plaintiff claims an action under 42 U.S.C. § 1985 against Defendants Kono, Steele, BYU, and Bennett Tueller Johnson & Deere. Third, Plaintiff has brought a RICO claim against Defendants Kono, Steele, BYU, and Bennett Tueller Johnson & Deere. Fourth, Plaintiff has brought a common law extortion claim against Defendants Kono, Steele, BYU, and Bennett Tueller Johnson & Deere. Fifth, Plaintiff has brought an action under 42 U.S.C. § 1983 against Governor Jon Huntsman and Judge Fred Howard. Sixth and finally, Plaintiff has brought a common law abuse of legal process claim against Defendants Steele, Kono,

7

BYU, and Bennett Tueller Johnson & Deere. The court addresses
each of these arguments in turn.

## I. Section 1983 Claim

Plaintiff's first claim is a Section 1983 claim he has
brought against two sets of defendants. First, Plaintiff claims
an action under Section 1983 against Defendants Kono, Steele,
BYU, and Bennet Tueller Johnson & Deere for "unlawfully seeking
and obtaining an Order for the arrest of Plaintiff based on a
non-exist[e]nt statute." Plaintiff alleges these defendants were
acting under color of state law and that they "willfully and
maliciously violated Utah Rule of Professional Conduct 3.3(d) to
bring about fraud and/or deceit upon the court to obtain that
arrest warrant in not giving out critical information to Judge
Howard regarding the ex parte motion being sought that Plaintiff
was homeless and barely had enough money to survive and thus
could not make it to Utah for the hearing." Plaintiff claims
Defendants' actions prevented him from participating in his
various state and federal lawsuits and that his "right to
interstate travel has been denied in Utah."

Second, Plaintiff's first claim for relief under Section
1983 also includes an action against Defendant Judge Howard.
Plaintiff claims that Judge Howard "acted outside the authority
of state law in issuing an arrest warrant for Plaintiff based on
Utah Rule of Civil Procedure 69 where no such statute exists,"
that Judge Howard "is aware that BYU violated URPC 3.3 in

8

obtaining that arrest warrant," and that by issuing the "unlawful arrest warrant," Judge Howard deprived Plaintiff of "the right to interstate travel, the right to attend and participate in judicial proceedings o[f] which he was a part, and obtaining witness depositions." The Section 1983 claims against both sets of these defendants fails for several reasons.

Section 1983 provides a remedy against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes . . . any citizen . . . to be subjected . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and Laws. . . ." 42 U.S.C. § 1983. Thus, to state a claim for relief in an action brought under Section 1983, Plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a person under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) (per curiam).

A.   *The court lacks jurisdiction over this claim under the* Rooker-Feldman *doctrine.*

Federal district courts do not have jurisdiction to review, reverse, or invalidate state court decisions. *See District of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). The *Rooker-Feldman* doctrine bars "a party losing in state court . . .

9

from seeking what in substance would be appellate review of [a]
state judgment in a United States District Court, based on the
losing party's claim that the state judgment itself violates the
loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997,
1005-06 (1994).

In bringing this claim, Plaintiff is arguing that Judge
Howard's issuance of the arrest warrant violated Plaintiff's
rights; however, under the *Rooker-Feldman* doctrine, Plaintiff
cannot properly bring that claim in this court.  The Tenth
Circuit has repeatedly disallowed such cases brought in federal
court.

For example, in *Anderson v. State of Colorado*, 793 F.2d 262
(10th Cir. 1986), the plaintiff sued under Section 1983 for
alleged violations of his constitutional rights that occurred
during custody proceedings in Colorado state court.  The
plaintiff, who had lost a state child custody proceeding, brought
an action in federal district court alleging that the State of
Colorado and the judges of the First Judicial District in
Jefferson County, Colorado, had violated his right to equal
protection and due process by engaging in a discriminatory
practice of awarding custody to mothers in child custody
disputes.  Among other things, the plaintiff sought declaratory
and injunctive relief under Section 1983.  The Tenth Circuit held
that "[w]here a constitutional issue could have been reviewed on
direct appeal by the state appellate courts, a litigant may not

10

seek to reverse or modify the state court judgment by bringing a constitutional claim under 42 U.S.C. § 1983." *Anderson*, 793 F.2d at 263. The court further explained:

> Despite Mr. Anderson's protestations to the contrary, his lawsuit essentially seeks to undo the custody decision of the Colorado state court. Therefore, it fits squarely within the parameters of the *Doe-Feldman* doctrine prohibiting federal district courts from reviewing state-court judgments. Mr. Anderson's recourse, if any, is to exhaust his appeals in the Colorado courts and to petition the Supreme Court of the United States for certiorari review of the decision of the state supreme court.

*Id.* at 264.

Thus, the proper course for Plaintiff to challenge Judge Howard's order was "to exhaust his appeals in . . . [Utah] courts and to petition the Supreme Court of the United States for certiorari review of the decision of the state supreme court." *Id.* Plaintiff alleges that he tried to appeal the issuance of the arrest warrant and the "near $3000 sanction," but that the Utah Court of Appeals concluded no final appealable order existed. However, Plaintiff admits that he did not pursue his appeals after receiving this decision, and therefore that he did not exhaust the system for appealing the arrest warrant. The court also notes that Plaintiff has not stated that he petitioned Judge Howard to set aside the arrest warrant.

More recently, the scope of the *Rooker-Feldman* doctrine has been further defined by both the Supreme Court and the Tenth

11

Circuit.  In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544
U.S. 280 (2005), the Supreme Court held that the *Rooker-Feldman*
doctrine "is confined to cases of the kind from which the
doctrine acquired its name:  cases brought by state-court losers
complaining of injuries caused by state-court judgments rendered
before the district court proceedings commenced and inviting
district court review and rejection of those judgments."  *Exxon
Mobil*, 544 U.S. at 284.  In light of this holding, the Supreme
Court ruled that the Third Circuit had erred in dismissing a case
in which Exxon Mobil had filed suit against a foreign entity in
federal court two weeks after the same entity had filed suit
against Exxon Mobil in state court and before any *final* judgments
in the state case were made.  The Court explained:

> *Rooker* and *Feldman* exhibit the limited
> circumstances in which this Court's appellate
> jurisdiction over state-court judgments, 28
> U.S.C. § 1257, precludes a United States
> district court from exercising subject-matter
> jurisdiction in an action it would otherwise
> be empowered to adjudicate under a
> congressional grant of authority . . . . In
> both cases, the losing party in state court
> filed suit in federal court *after* the state
> proceedings ended, complaining of an injury
> caused by the state-court judgment and
> seeking review and rejection of that
> judgment.

*Id.* at 291 (emphasis added).

The Tenth Circuit has understood this language to mean that
the *Rooker-Feldman* doctrine applies only to suits filed in
federal courts "after state proceedings are final."  *Guttman v.*

*Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006).  In *Guttman*, the
Tenth Circuit also explained that "a judgment would be considered
final for *Rooker-Feldman* purposes: (1) 'when the highest state
court in which review is available has affirmed the judgment
below and nothing is left to be resolved'; (2) 'if the state
action has reached a point where neither party seeks further
action'; or (3) 'if the state court proceedings have finally
resolved all the federal questions in the litigation, but state
law or purely factual questions (whether great or small) remain
to be litigated.'" *Id.* at 1032 n.2 (quoting *Federacion de
Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de
Puerto Rico*, 410 F.3d 17, 24 (1st Cir. 2005)).

Here, Plaintiff is complaining of an arrest warrant that was
issued because he did not appear at a hearing regarding a civil
judgment that had been entered against him in state court.  It
appears that the *Rooker-Feldman* doctrine applies in this case
because, from what the court gathers from Plaintiff's complaint,
presumably a final order had been issued in that case.  Thus, the
proper course of protesting the issuance of the arrest warrant
was to use the state court system for appealing such actions by a
state district judge.  As a result, it appears that this court
has no subject matter jurisdiction over this claim.

However, as set forth below, even if the *Rooker-Feldman*
doctrine does not apply to this claim, Plaintiff's claim should
still be dismissed because it lacks merit.  In addition, Judge

13

Howard enjoys absolute immunity from Plaintiff's claim, so the claim against him should be dismissed.

B.   *Plaintiff's Section 1983 claim against Defendants Kono, Steele, BYU, and Bennet Tueller Johnson & Deere fails because the complained of act did not implicate Plaintiff's rights under the Constitution or federal law and because Plaintiff has not alleged facts supporting that these Defendants were acting under color of state law.*

Plaintiff's claim is that Defendants drafted a court order based on a non-existent statute.  However, the order signed by Judge Howard had no impact on Plaintiff until Judge Howard signed the order.  Judge Howard's act of signing the order gave force and effect to the order requiring Plaintiff to appear for the hearing or face arrest, not Defendants Kono, Steele, BYU, and Bennett Tueller Johnson & Deere's act of drafting an order for Judge Howard to sign.  Plaintiff has not alleged that these Defendants somehow forced Judge Howard to sign the order.  In addition, Plaintiff admits in his complaint that he raised the same arguments with Judge Howard that he is raising here:  that he lacked funds to travel to Utah more than once and that the statute upon which the order was based was nonexistent.  However, Judge Howard presumably rejected Plaintiff's arguments.  As a result, the court concludes that Defendants' mere act of drafting the order for Judge Howard's signature did not implicate one of Plaintiff's rights under the Constitution or federal law.

14

Furthermore, although Plaintiff makes the conclusory assertion that these private defendants were acting under color of state law, Plaintiff has not set forth any facts supporting that assertion. As a result, Plaintiff has not set forth a Section 1983 claim.[3]

C.  *Judge Howard enjoys absolute judicial immunity from Plaintiff's claim.*

To allow our courts to function without harassment or intimidation, judges are absolutely immune from suits for acts done in their judicial capacities. *See Stump v. Sparkman*, 435 U.S. 349, 355-56, 356-57 (1978); *see also Snell v. Tunnell*, 920 F.2d 673, 686-87 (10th Cir. 1990) (common law immunity allows persons in judicial system latitude to work without threat of retaliatory Section 1983 litigation), *cert. denied*, 499 U.S. 976 (1991). The judicial immunity question turns on whether the act complained of was an integral part of the judicial process. A judge's act is an integral part of the judicial process if the act involved a function normally performed by a judge and if the parties were dealing with the judge in his or her judicial capacity. *See Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir.), *cert. denied*, 513 U.S. 832 (1994).

---

[3]In addition, the court notes that Plaintiff's claim that Defendants violated a rule of professional conduct does not give rise to a Section 1983 claim. An ethical rule is not a right secured under the Constitution or federal law. Such an allegation is properly made in a complaint to the Utah State Bar rather than as a claim in a federal lawsuit.

15

Plaintiff's claim asserts that Judge Howard violated Plaintiff's civil rights because he issued an arrest warrant for Plaintiff after Plaintiff failed to appear at a hearing.  Because Plaintiff complains of Judge Howard's judicial acts, Judge Howard is absolutely immune from suit.

Judges "are absolutely immune even when their action[s are] erroneous, malicious, or in excess of their judicial authority." *Van Sickle v. Holloway*, 791 F.2d 1431, 1435 (10th Cir. 1986); *see also Stump*, 435 U.S. at 356-57 (judge retains absolute immunity even if it is alleged that the judge acted maliciously or corruptly).

Plaintiff disagrees with Judge Howard's issuance of the warrant for Plaintiff's arrest.  To properly challenge Judge Howard's actions, Plaintiff should have exhausted his appeals of Judge Howard's orders within the state court system, including to the United States Supreme Court.  As a result, this claim for damages against Judge Howard is barred by well-settled law and should be dismissed.

In conclusion, Plaintiff's first claim, brought under 42 U.S.C. § 1983 should be dismissed because the court lacks subject matter jurisdiction over it under the *Rooker-Feldman* doctrine. Furthermore, even if the court does have jurisdiction over the claim, the facts alleged do not support Plaintiff's claim, and it therefore lacks merit.  In addition, Judge Howard has absolute

judicial immunity from this claim because he was acting in his official judicial capacity.

## II.  Section 1985 Claim

Second, Plaintiff has brought a claim under 42 U.S.C. § 1985 against Defendants Kono, Steele, BYU, and Bennett Tueller Johnson & Deere for taking "actions to deprive Plaintiff from attending both state and federal court proceedings, from freely obtaining testimony from witnesses to those court cases and otherwise hindering Plaintiff's quest for justice in those cases." Plaintiff claims that those defendants intimidated him and threatened to have him arrested by an illegally obtained and unlawful arrest warrant.  Plaintiff claims that these defendants kept him from obtaining testimony from witnesses for his court cases.

A.  *The court lacks jurisdiction over this claim under the* Rooker-Feldman *doctrine.*

As with Plaintiff's first claim, this claim appears to be based on these defendants' act of seeking to have the order issued by Judge Howard (discussed above) and their later request for the issuance of a warrant for Plaintiff's arrest because of his failure to appear at the hearing.  For the same reasons explained above, as with Plaintiff's first claim, this claim is barred by the *Rooker-Feldman* doctrine.  The issuance of the arrest warrant, which appears to be the cause of Plaintiff's claim that he was unable to obtain testimony from witnesses in

17

his court cases and was intimidated, was issued by Judge Howard
as a consequence of Plaintiff's failure to comply with Judge
Howard's order, and resulted from the decisions made in that
case.  There is no way this court can review this claim without
essentially reviewing Judge Howard's decision and order, which
would be a violation of the *Rooker-Feldman* doctrine.  As a
result, Plaintiff is basically appealing Judge Howard's
decisions, and this court lacks jurisdiction over this claim.

B.  *Even if the court had jurisdiction over this claim, it should
be dismissed because it lacks merit.*

Even if the court had jurisdiction over this claim, this
claim is wholly without merit.  The court assumes that
Plaintiff's claim is brought under 42 U.S.C. § 1985(2) because
Plaintiff is not a court officer, as required by subsection (1)
and Plaintiff has not alleged that he is a member of a protected
class, as required by subsection (3).  Section 1985(2) provides a
cause of action against those who obstruct justice, intimidate a
party, a witness, or a juror.  It provides as follows:

> If two or more persons in any State or
> Territory conspire to deter, by force,
> intimidation, or threat, any party or witness
> in any court of the United States from
> attending such court, or from testifying to
> any matter pending therein, freely, fully,
> and truthfully, or to injure such party or
> witness in his person or property on account
> of his having so attended or testified, or to
> influence the verdict, presentment, or
> indictment or any grand or petit juror in any
> such court, or to injure such juror in his
> person or property on account of any verdict,

18

> presentment, or indictment lawfully assented
> to by him, or of his being or having been
> such juror; or if two or more persons
> conspire for the purpose of impeding,
> hindering, obstructing, or defeating, in any
> manner, the due course of justice in any
> State or Territory, with intent to deny to
> any citizen the equal protection of the laws,
> or to injure him or his property for lawfully
> enforcing, or attempting to enforce, the
> right of any person, or class of persons, to
> the equal protection of the laws . . . the
> party so injured or deprived may have an
> action for the recovery or damages occasioned
> by such injury or deprivation, against any
> one or more of the conspirators.

42 U.S.C. § 1985(2).

Plaintiff appears to be alleging that the defendants violated Section 1985 because, even though they knew Plaintiff could only travel one time to Utah because of Plaintiff's financial situation, they drafted the state order to require Plaintiff to appear in a Utah court on the last day Plaintiff was allowed to depose a witness in another case. However, even if such behavior is construed as an attempt to make it difficult for Plaintiff to depose the witness, such behavior does not rise to the level of a Section 1985(2) action, or any other federal action contemplated by this court. The order issued by the state court calling for Plaintiff to appear because of a judgment entered against him or face arrest is not the type of force, intimidation, or threat contemplated by Section 1985(2); that order was simply the consequence of litigation in a legal proceeding. Furthermore, as discussed above, Plaintiff has not

19

alleged that Defendants somehow forced the state judge to sign the order requiring Plaintiff to appear in court or face arrest. Defendants were not legally required to accommodate Plaintiff's financial situation, and they should not be prevented legally from enforcing a judgment against Plaintiff simply because Plaintiff had brought another action against Defendants and was suffering financial hardship.

Furthermore, as with Plaintiff's first claim, Defendants merely drafted an order for the judge's signature; the judge gave the order legal effect by signing it. Although Plaintiff alleges Defendants "illegally obtained" the arrest warrant, Defendants simply requested the warrant from the trial judge. Plaintiff alleges the arrest warrant was "unlawful"; however, a Utah judge decided to sign it and Plaintiff has not shown that presenting the order to the judge violated the law. As with assertions made to support Plaintiff's first claim, these assertions are merely unsupported legal conclusions that this court rejects.

In conclusion, Plaintiff's second claim, brought under 42 U.S.C. § 1985, should be dismissed because facts alleged by Plaintiff do not support the elements of this claim.

### III.  RICO Claim

Third, Plaintiff has brought a RICO claim against Defendants Kono, Steele, BYU, and Bennett Tueller Johnson & Deere. Specifically, Plaintiff claims that the racketeering activity engaged in by these defendants, as defined by 18 U.S.C. §

1961(1)(B), is that related to obstruction of justice, as defined
by 18 U.S.C. § 1503. Plaintiff alleges that these defendants
sought to obstruct and they impeded the administration of
justice, they used email to intimidate him into dropping his
"valid court case" by illegally obtaining an "unlawful arrest
warrant," and they conspired to interfere with the lawful
administration of justice. In other words, Plaintiff complains
that these defendants conspired to prevent him from pursuing his
cases against BYU and the LDS Church and that they unlawfully
obstructed justice to accomplish that objective.

A.   *This court lacks jurisdiction over this claim under the*
Rooker-Feldman *doctrine.*

     As with the above two claims, this claim appears to be based
on the issuance of the arrest warrant, discussed above. For the
same reasons explained above, this claim is essentially an appeal
from Judge Howard's order and his issuance of the warrant for
Plaintiff's arrest. For the reasons discussed above, a review of
this claim by this court would violate the *Rooker-Feldman*
doctrine, so this court lacks jurisdiction over this claim.

B.   *Even if this court has jurisdiction over this claim, it fails*
*on the merits and should be dismissed.*

     One of the many problems with Plaintiff's RICO claim is that
Section 1503 concerns threats, intimidation, and so forth, of
"any grand or petit juror, or officer in or of any court of the
United States, or officer who may be serving at any examination

21

or other proceeding before any United States magistrate judge or other committing magistrate . . . ."  18 U.S.C. § 1503(a). Plaintiff, who was a pro se plaintiff in the state and federal cases, was not serving as a juror or officer in or of the court, and thus does not fall under the category of any of these named individuals.  Thus, Section 1503 is inapplicable to Plaintiff's situation.

Furthermore, the court concludes that none of the other forms of racketeering activity mentioned in Section 1961 are applicable to the alleged facts set forth by Plaintiff in his complaint.  See 18 U.S.C. § 1961(1).  As a result, Plaintiff has failed to set forth a RICO claim.

## IV.   Common Law Extortion Claim

Fourth, Plaintiff has brought a common law extortion claim against Defendants Kono, Steele, BYU, and Bennett Tueller Johnson & Deere.  Plaintiff alleges these defendants used the threat of force of arrest to try to extort him into dropping legal proceedings against BYU.

Plaintiff appears to rely on an email sent from Defendant Kono to Plaintiff on May 26, 2005, to support this claim.  That email "confirms [BYU's] May 20, 2005 settlement offer to [Plaintiff] . . . that BYU [would] set aside the Judgment against Plaintiff in return for [Plaintiff's] dismissal with prejudice of all pending litigation against BYU."  (Document #1, Exhibit J.)

22

"'Under the common law and most recent statutory codes and proposals, extortion by a private person, or blackmail, is limited to obtaining property by threatening to inflict harm.'" *Rael v. Sullivan*, 918 F.2d 874, 877 n.1 (10th Cir. 1990) (quoting 31A Am.Jur.2d § 49), *cert. denied*, 499 U.S. 928 (1991).  In this case, Defendants did not threaten Plaintiff with harm as contemplated by common law extortion.  Instead, a judgment had been entered against Plaintiff in BYU's favor in another case. Judge Howard ordered Plaintiff to appear in court regarding that judgment or face arrest.  BYU, in sending the email, was simply extending a settlement offer to Plaintiff that it would ask that the judgment in its favor be set aside if Plaintiff asked that his lawsuits against BYU be dismissed.  These defendants are neither the ones who issued that order threatening Plaintiff with arrest if he did not appear, nor the ones who later issued the arrest warrant.  That arrest warrant, which was issued by the court, was the result of Plaintiff's failure to appear at a hearing.  Its issuance was not these defendants' act; instead, it was the court's act done as a consequence of Plaintiff's behavior.  As a result, this claim lacks merit and should be dismissed.

### V.  Second Section 1983 Claim

Fifth, Plaintiff has brought a Section 1983 claim against Governor Huntsman and Judge Howard based on an alleged First Amendment violation of the separation of church and state.  Among

23

other allegations made to support his claim, Plaintiff alleges
that the judicial selection committee in Utah selects mainly LDS
judges to fill judicial vacancies, that the selection process is
done predominantly on religious lines, and that the selection
process has created a judicial system where LDS sponsored and
affiliated organizations, like BYU, receive differential
treatment from those LDS judges.  Plaintiff alleges that every
judge on the Utah Court of Appeals belongs to the LDS Church, and
that every judge involved in his state litigation belongs to the
LDS Church.  Plaintiff argues that all of the judges who ruled on
his cases brought against BYU and the LDS Church were obligated
to defend the LDS Church, and as a result, they ruled against
Plaintiff in his claims against BYU and the LDS Church.
Plaintiff alleges the Utah Court of Appeals' decisions in his
cases resulted from religious bias in favor of BYU and the LDS
Church.  Plaintiff also alleges that Pat Bartholomew, the Utah
Supreme Court Clerk, allowed BYU to file a late response out of
religious bias.  Plaintiff claims that the bias in favor of the
LDS Church exists amongst Utah's LDS judiciary, making it
impossible for him to get a fair tribunal in his cases against
BYU.

A.   *Judge Howard enjoys absolute judicial immunity from
Plaintiff's claim.*

        First, this second Section 1983 claim brought against Judge
Howard is barred by absolute judicial immunity for the same

24

reason Plaintiff's other Section 1983 claim brought against Judge Howard is barred by absolute judicial immunity, as discussed in Section IC above.  Judge Howard appears to be a defendant under this claim because Plaintiff appears to be accusing Judge Howard of making the decisions he made in Plaintiff's case based on Judge Howard's religious views rather than on the merits of the case.  Thus, Judge Howard's actions that are at issue under this claim were done in his official judicial capacity.  As a result, for the same reasons set forth in Section IC above, Judge Howard is absolutely immune from this claim.

B.  *Governor Huntsman is not a "person" within the meaning of 42 U.S.C. § 1983.*

Second, Plaintiff's claim against Governor Huntsman fails because the Supreme Court has held that neither states nor state officers sued in their official capacities are "persons" within the meaning of 42 U.S.C. § 1983.  *See Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  A lawsuit against a state official in his official capacity is considered a lawsuit against the official's office, and as such, a lawsuit against the state itself.  *See id.*  Plaintiff brought his action against Governor Huntsman because of the governor's role in selecting members of the state judicial selection committee; that role is performed in Governor Huntsman's official capacity as the state governor.  As a result, Plaintiff's claim against Governor Huntsman lacks merit.

25

## VI.  Common Law Abuse of Legal Process Claim

Finally, Plaintiff has brought a "common law abuse of legal process" claim against Defendants Steele, Kono, BYU, and Bennett Tueller Johnson & Deere.  There are two parts to this claim.  First, Plaintiff claims that these defendants "used the state judicial process for a purpose for which it was not intended" by obtaining the arrest warrant under the basis of URCP 69, which has been repealed.  Further, Plaintiff claims that these defendants used fraud and other illegal means to obtain the warrant by not disclosing to the court that Plaintiff did not have the financial means to travel from out of state to the hearing.  Plaintiff alleges that these defendants' acts have injured Plaintiff "in denying him access to the state of Utah, limiting his ability to obtain needed testimony in those cases, and to appear at any of the hearings for those cases."  This allegation is presumably also based on the arrest warrant that was issued due to Plaintiff's failure to appear at the hearing in state court, discussed above.

Second, Plaintiff also claims that these defendants filed a motion in federal court to have Plaintiff declared a vexatious litigant, using many lies.  Plaintiff claims that defendants filed that motion to injure Plaintiff, who is a law student, "to interfere with his right to practice law which would be impossible if he is declared a vexatious litigator."

26

*A.    Under the* Rooker-Feldman *doctrine, the court lacks
jurisdiction over the first part of Plaintiff's claim.*

The court lacks subject matter jurisdiction over the first
part of Plaintiff's abuse of process claim under the *Rooker-
Feldman* doctrine.  In determining whether the *Rooker-Feldman*
doctrine applies, "'the fundamental and appropriate question to
ask is whether the injury alleged by the federal plaintiff
resulted from the state court judgment itself or is distinct from
that judgment.'"  *Bisbee v. McCarty*, 3 Fed. App. 819, 822 (10ᵗʰ
Cir. 2001) (citation omitted).

In *Bisbee*, the plaintiff, Bisbee, and the defendant,
McCarty, had been parties in an earlier collection case in which
McCarty had been the plaintiff and Bisbee had been the defendant.
Bisbee had lost the earlier case.  Bisbee then brought an action
against McCarty.  That action included a common law abuse of
process claim "charging that McCarty's attorneys abused the
[state] court system to extort money from [Bisbee] that [Bisbee]
did not owe, [and] by obtaining improper ex parte orders from the
district court that forced [Bisbee] to choose between expending a
large amount of valuable time in fighting such orders or paying
the extortionate demand."  *Id.* at 821-22.  The Tenth Circuit
concluded that Bisbee's common law abuse of process claim was
barred by the *Rooker-Feldman* doctrine because "[t]here [was]
simply no way for a federal court to resolve this claim in
Bisbee's favor without determining that the state court judgment,

or interlocutory orders entered in the course of the state court proceedings, were erroneously entered or void." *Id.* at 822.

Similarly, in the instant case, because Plaintiff's alleged injuries resulted from the issuance of the arrest warrant, adjudication of this part of Plaintiff's abuse of process claim "would require the court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court judgment," and is therefore barred for lack of subject matter jurisdiction. *Id.* at 822-23.

*B. Even if* Rooker-Feldman *does not apply to the first part of Plaintiff's claim, this claim lacks merit.*

In addition, even if the *Rooker-Feldman* doctrine does not prevent the court from exercising jurisdiction over the first part of Plaintiff's claim, that part of Plaintiff's claim fails on the merits. As the court as already stated, these defendants' actions of (1) drafting the order for the court and (2) requesting the arrest warrant did not cause Plaintiff's alleged harm; instead, it was Judge Howard's act of signing the order and arrest warrant that gave them legal effect. Judge Howard independently decided to issue the order and warrant. Therefore, because Plaintiff has failed to allege Defendants committed an

act that caused the alleged harm, the first part of Plaintiff's claim fails on the merits.[4]

C. *The second part of this claim fails because it lacks merit.*

Regarding the second part of this claim, it appears that Plaintiff is claiming that these defendants have injured his ability to practice law by filing a motion, which was full of lies, in federal court, to have Plaintiff declared a vexatious litigant. There are several problems with the merit of the second part of this claim.

First, the court takes judicial notice of Judge Campbell's order entered in *Raiser v. The Church of Jesus Christ of Latter-Day Saints*, 2:04-CV-896-TC. *Tal v. Hogan*, __ F.3d __, 2006 WL 1775371, at n.24 (10th Cir. June 29, 2006) (noting court may take judicial notice of its own files and records); *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) (same). In the Order and Memorandum Decision in that case, entered on February 7, 2006 (Case No. 2:04-CV-896-TC, Document #215), Judge Campbell denied without prejudice BYU's Motion for Permanent Injunction Against Aaron Raiser as a Vexatious Litigant, and referred that motion to Chief Judge Dee Benson for resolution, with a recommendation that

---

[4]The court also notes that Plaintiff contradicted his implied assertion that Judge Howard acted on Defendants' representations. Plaintiff admits that he made Judge Howard aware the Utah Rule of Civil Procedure 69 had been repealed and that Plaintiff was experiencing financial hardship, making it difficult for him to travel to Utah. Thus, Judge Howard was aware of this information, but chose not to set aside the arrest warrant.

29

Plaintiff be placed on the court's restricted filer list.   (Case
No. 2:04-CV-896-TC, Document #215, at 19.)   Therefore, in that
order, the motion to have Plaintiff declared a vexatious
litigant, which is what Plaintiff complains of in this claim, was
denied.

The court also takes judicial notice of the order signed by
Chief Judge Dee Benson on April 14, 2006.   (Document #2.)   In
that order, Judge Benson does not decide whether to declare
Plaintiff a vexatious litigant; instead, he orders that filing
restrictions be placed upon any future pleadings attempted to be
filed by Plaintiff.   Judge Benson explained that prior to the
April 14, 2006 order being signed, the court had issued to
Plaintiff an order to show cause why the court should not impose
filing restrictions on future pleadings attempted to be filed by
Plaintiff, but that Plaintiff had never filed a response to the
order to show cause.   Judge Benson also explained in the order
that the court had reviewed the numerous cases and pleadings
filed in this court by Plaintiff and determined that Plaintiff
should have restrictions placed on his ability to file in this
court.

Therefore, the second part of Plaintiff's claim fails for at
least two reasons.   First, the defendants' motion to have
Plaintiff declared a vexatious litigant was denied.   Instead,
Judge Campbell, on her own initiative, recommended to Judge
Benson that Plaintiff be placed on the court's restrictive filer

30

list, and Judge Benson, upon the recommendation of Judge Campbell and upon Judge Benson's independent review of the record, placed restrictions on Plaintiff's ability to file pleadings in this court. Because Plaintiff has not shown that any injury resulted from defendants' act of simply filing their motion, that claim fails.

Second, Plaintiff's claim is against defendants, who simply filed a motion. Judge Benson's order does not rely on any representations made by defendants. Judge Benson's order expressly states that the court itself reviewed the numerous cases and pleadings filed by Plaintiff in this court. As a result, the restricted filer order resulted from Judge Benson's independent analysis of Plaintiff's cases and from Judge Campbell's recommendation, not from these defendants' motion and any representations contained therein. Consequently, the second part of Plaintiff's claim also lacks merit.

**RECOMMENDATION**

Based on the above analysis, the court concludes the following:

(1) As to Plantiff's first Section 1983 claim, the court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. Even if the court had jurisdiction, the claim should be dismissed because it lacks merit. In addition, Judge Howard enjoys absolute judicial immunity from this claim.

31

(2) As to Plaintiff's Section 1985 claim, the court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. Even if the court had jurisdiction, the claim lacks of merit and should be dismissed.

(3) As to Plaintiff's RICO claim, the court again lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. Even if the court had jurisdiction, the claim lacks of merit and should be dismissed.

(4) As to Plaintiff's common law extortion claim, that claim lacks merit and should be dismissed.

(5) As to Plaintiff's second Section 1983 claim, it should be dismissed as against Judge Howard because he enjoys absolute judicial immunity from this claim. Further, the claim should be dismissed as against Governor Huntsman because he is not a "person" within the meaning of Section 1983 because he was acting in his official capacity as a state officer.

(6) As to Plaintiff's common law abuse of legal process claim, the court lacks jurisdiction over the first part of this claim; even if the court had jurisdiction over the first part of this claim, it should be dismissed for lack of merit. In addition, the second part of this claim should be dismissed because it lacks merit.

In summary, the court lacks jurisdiction over many of Plaintiff's claims, as enumerated above. In addition, even in construing Plaintiff's claims liberally, and even in accepting all well-

pleaded facts as true and drawing inferences from those facts in Plaintiff's favor, the court concludes that all of Plaintiff's claims lack merit.  In addition, the claims brought against Judge Howard are barred by absolute judicial immunity.  Therefore, in response to Judge Campbell's May 9, 2006 order of reference for this magistrate judge to "review this case to determine whether the action is meritorious, duplicative or frivolous and therefore subject to dismissal pursuant to the filing restrictions imposed on Mr. Raiser by [Judge Benson's April 14, 2006 order]," **IT IS RECOMMENDED** that the court **dismiss** Defendant's complaint.

Copies of the foregoing report and recommendation are being mailed to the parties who are hereby notified of their right to object to the same.  The parties are further notified that they must file any objections to the report and recommendation, with the clerk of the district court, pursuant to 28 U.S.C. § 636(b), within ten (10) days after receiving it.  Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

DATED this _25th_ day of July, 2006.

BY THE COURT:

Samuel Alba
United States Chief Magistrate Judge

33